JUDGE LYNCH     09 CV 7513

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
HANSE SHIPPING CORPORATION

                                        Plaintiff,

-v-

REDE GUSA MINERAÇÕES LTDA.

                                        Defendant.
------------------------------------------------------------------x

09 CV

RECEIVED

VERIFIED COMPLAINT

AUG 27 2009

U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff, HANSE SHIPPING CORPORATION, (hereinafter "HANSE"), by its

attorneys, CHALOS & CO, P.C., as and for its Verified Complaint against Defendants,

REDE GUSA MINERAÇÕES LTDA. (hereinafter "REDE GUSA"), alleges upon

information and belief as follows:

## JURISDICTION

1.      The Court has subject matter jurisdiction by virtue that the underlying

claim herein is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and within the admiralty and maritime jurisdiction of

this Court under 28 U.S.C. § 1333.

## THE PARTIES

2.      At all times material hereto, Plaintiff, HANSE, was and still is a foreign

business entity with a principal place of business at Vogesenstrasse 40, CH-4056 Basel,

Switzerland.

3.      At all times material hereto, Defendant, REDE GUSA, was and still is a

foreign business entity with a principal place of business at No.: 1001-Conj. 408 Belo

Horizonte (Minas Gerais), Brazil.

FACTS AND CLAIM

4.      On or about October 2, 2007, HANSE, as carriers, and REDE GUSA, as charterers, entered into a charter party agreement for the carriage of 3,600,000 metric tons (10% more/less in vessels' option) of Pig Iron from Rio de Janeiro to Quingdao, People's Republic of China, on a vessel to be nominated by HANSE. The shipments were to be carried out between December 2007 and December 2012. *A copy of the October 2, 2007 charter party (hereinafter "the Pig Iron contract") is attached hereto as Exhibit "1".*

5.      On or about October 8, 2007, the parties entered into a second charter party agreement for the carriage of 4,500,000 metric tons (10% more/less in vessels' option) of Iron Ore from Santos-Guaruja to one (1) "good, safe, always accessible port Peoples' Republic of China", on a vessel to be nominated by HANSE. The shipments were to be carried out between December 2007 and December 2012. *A copy of the October 8, 2007 charter party (hereinafter "the Iron Ore contract") is attached hereto as Exhibit "2".*

6.      These charter party agreements are maritime contracts.

7.      Pursuant to the terms and conditions of the two (2) charter party agreements, HANSE and REDE GUSA agreed, among other things, to the payment of freight at the rate of USD 37.00 per intaken metric ton. *See Exhibits "1" and "2", respectively, at paragraph "8".*

8.      The parties further agreed to the advance payment by REDE GUSA of 15% of the estimated freight to HANSE. *See Exhibits "1" and "2", respectively, at paragraph "8".*

9.     On or about October 4, 2007 and October 8, 2007, HANSE issued its respective invoices for these advance payments in connection with each of the two (2) charter parties. *Copies of Invoice RD J P I 101-07 and Invoice RGM – I.O. – 102-07 for each of the two (2) charter parties are attached hereto as Exhibits "3" and "4", respectively.*

10.     Despite repeated demands for payment, Defendant REDE GUSA failed, neglected, and/or refused to make payment of said sums due and owing to Plaintiff HANSE.

11.     On or about March 18, 2008, REDE GUSA advised HANSE that it would be unable to perform the Iron Ore contract until, at the earliest, September 2008. *A copy of the relevant correspondence from REDE GUSA is attached hereto as Exhibit "5".*

12.     REDE GUSA further advised HANSE that it was prepared to perform the Pig Iron contract immediately, but that it was unable to pay the freight in advance as provided in the parties' October 7, 2007 agreement. *See Exhibit "5".*

13.     On or about March 20, 2008, REDE GUSA and HANSE agreed that the original contracts would be maintained, but payment for freight would not be made in advance. In consideration for changing the conditions of payment, REDE GUSA further agreed to the payment of freight at an adjusted rate of USD 50.00 per intaken metric ton. *A copy of the relevant correspondence from REDE GUSA is attached hereto as Exhibit "6".*

14.     On or about April 8, 2008, in accordance with the parties' March 20, 2008 agreement, HANSE provided REDE GUSA with two (2) revised contracts to reflect the

adjusted freight rate and payment terms. *Copies of the revised contracts are attached hereto as Exhibits "7" and "8", respectively.*

15.     The revised Pig Iron contract further provided that performance would commence in May 2008. *See Exhibit "7" at Clause 3.*

16.     On or about April 15, 2008, REDE GUSA, through the sole broker, advised HANSE that the contents of the revised contracts were acceptable and that the contracts would be signed and returned to HANSE upon the export manager's return from a business trip. *A copy of the relevant correspondence with the broker is attached hereto as Exhibit "9".*

17.     Notwithstanding REDE GUSA's representations on April 15, 2008, the signed contracts were not returned to HANSE and REDE GUSA did not perform its obligations pursuant to the parties' agreements.

18.     REDE GUSA's non-performance is in breach of the parties' original Pig Iron and Iron Ore contracts dated October 2, 2007 and October 7, 2007, respectively.

19,     Despite repeated demands for payment, Defendant REDE GUSA failed, neglected, and/or refused to make payment of the amounts due and owing to Plaintiff HANSE under the parties two (2) contracts.

20.     Pursuant to the terms of the two (2) charter party agreements, all disputes arising there under are to be submitted to London arbitration with English law to apply. Plaintiff has or shortly will commence arbitration.

21.     This action is brought in order to obtain jurisdiction over Defendant REDE GUSA and also to obtain security for Plaintiff's claims and in aid of London arbitration proceedings.

22.    English law, including but not limited to Section 63 of the English Arbitration Act of 1996, provides that a prevailing party is entitled to interest, costs and legal fees.

23.    As best as can now be estimated, the Plaintiff HANSE expects to recover the following amounts in London arbitration from Defendant REDE GUSA:

| | | | |
|---|---|---|---|
| A. | Principal claim: | | |
| | | Breach of Pig Iron Contract | $ 49,500,000.00[1] |
| | | Breach of Iron Ore Contract | $ 62,617,500.00[2] |
| | | Total | $ 112,117,500.00 |
| B. | Estimated interest on Principal claim: 3 years at 7.5%, compounded quarterly | | $ 27,997,575.86 |
| C. | Estimated attorneys' fees: | | $ 250,000.00 |
| D. | Estimated arbitration costs: | | $ 250,000.00 |
| | **Total Claim** | | **$ 140,615,075.86** |

24.    Therefore, HANSE's total claim for breach of the maritime contracts against Defendant REDE GUSA is in the aggregate USD 140,615,075.86.

## BASIS FOR ATTACHMENT

25.    Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal

---

[1] Total freight due to HANSE: 3,960,000 tons at USD 37/ton = USD 146,620,000. HANSE successfully mitigated its damages in the amount of USD 97,020,000 (*i.e.* – 3,960,000 tons at USD 24.35/ton). Therefore, HANSE's total damages due to REDE GUSA's breach of the Pig Iron contract is USD 49,500,000.

[2] Total freight due to HANSE: 4,950,000 tons at USD 37/ton = USD 183,150,000. HANSE successfully mitigated its damages in the amount of USD 120,532,500. (*i.e.* – 4,950,000 tons at USD 24.35/ton). Therefore, HANSE's total damages due to REDE GUSA's breach of the Iron Ore contract is USD 62,617,500.

Rules of Civil Procedure, but Defendant is believed to have or will have during the pendency of this action, certain assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to, claimed by, or for the benefit of, the Defendant within this District held by various parties, as garnishees, including by not limited to electronic fund transfers.

26.    Defendant is continuously engaged in international shipping and conducts business in U.S. Dollars.  Nearly all companies engaged in the international shipping industry transact business in U.S. Dollars and therefore regularly have assets in New York City.  Dollars are the *lingua franca* of international commerce.

27.    All international U.S. dollar transfers are processed by intermediary banks in the United States, mainly in New York City.  The Clearing House Interbank Payment System represents that it processes 95% of those transfers.

28.    Plaintiff believes that some of these assets of Defendant, to wit: accounts; bank accounts; monies; charter hire; credits; debts owed to the defendants; effects; payments for bunkers, cargo, goods or services; debts; unmatured debts; bills of lading; payments from the purchasers of cargoes; freight and/or hire payments to or from owners of vessels, or charterers, to, from, or for the benefit of, Defendant and/or Clearing House Interbank Payment System (CHIPS) credits or funds being transferred through intermediary banks, are located in this District in the possession of garnishees, including: ABN AMRO BANK, Bank of America, Bank of China, Bank of New York, Bank of Tokyo Mitsubishi UFJ Ltd., Barclay's Bank, BNP Paribas SA, Calyon, Calyon Financial, Inc., Citibank N/A, Credit Suisse Securities (USA) LLC, Deutsche Bank, HSBC (USA),

JPMorgan Chase Bank, Mashreqbank, Societe Generale, Standard Chartered Bank, UBS AG, U.S. Bank, Wachovia Bank, and Wells Fargo Bank.

WHEREFORE, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing them to appear and answer under oath all, and singular, the matters alleged in the Verified Complaint;

B.    That since the Defendant cannot be found within the District, as set forth in the Declaration of George M. Chalos (*attached hereto as Exhibit "10"*), and pursuant to Rule B and Rule E of the Supplemental Rules of Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B and Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of the Defendant tangible or intangible property or any other funds held by any garnishees in the district which are due and owing, or other property of, or for the benefit of, the Defendant, up to the amount of **USD 140,615,075.86** to secure and satisfy the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B and Rule E answer the matters alleged in the Complaint;

C.    That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: Oyster Bay, New York
      August 27, 2009

                      CHALOS & CO, P.C.
                      Attorneys for Plaintiff
                      HANSE SHIPPING CORPORATION

By: _____
                      George M. Chalos (GC-8693)
                      123 South Street
                      Oyster Bay, New York 11771
                      Tel: (516) 714-4300
                      Fax: (516) 750-9051
                      Email: gmc@chaloslaw.com

EXHIBIT 1



HANSE SHIPPING
CORPORATION

ORIGINAL

## Charter Party dated 02 of October 2007.

# M.V. "TBN"

**Charters:** Rede Gusa Minerações Ltda
Av. Raja Gabaglia # 1001 Conj. 408 – Belo
Horizonte - Minas Gerais – Brazil

**Carriers:** Hanse Shipping Corporation
Hans F Bihn
40, Vogesenstrasse,
CH-4056 Basel/Switzerland

This contract dated 02 of October 2007, is concluded by and between Rede Gusa Minerações Ltda, as Charters (hereinafter referred to as Charters), and Hanse Shipping Corporation as Carriers (hereinafter referred to as "Owners").

**WITNESSED THAT –**

This Charter Party whit Owners for the Shipment of Pig Iron from Rio de Janeiro to Quingdao, Peoples' Republic of China.

**1. DEFINITIONS**

In this contract, unless otherwise defined, the terms should have following meanings:

1.A"Pig Iron" – means Pig Iron in Bulk loaded in accordance whit IMO/ local regulations.

1.B"Dollars" and "Cents" mean respectively dollars and cents in lawful money of the United States of America.

**2. VESSELS TO BE USED:**

Bulk Carriers of about 60.000 mtons 10% +/- in vessels' option Pig Iron capacity, classed highest Lloyds Register or equivalent, P&I Club covered, geared or gearless in Carriers' option, maximum 25 years of age. Vessels to be nominated by Carriers to Charters latest 20 days prior to their expected arrival dates (ETA) within the agreed laydays.

1



HANSE SHIPPING
CORPORATION

The operating vessel shall be Owners controlled Bulk Carrier or Ore Carrier or OBO or Ore / Oil combination Carrier, Seaworthy, cargo worthy, tight, staunch and strong, suitable for intended voyage and suitable for ordinary grab discharging and shall be in the highest classification for vessel's of their age and type whit Lloyds Register or equivalent. All certificates of the vessel shall be valid till the voyage is complete. The vessel to be free of any overage premium.

The following vessels are not acceptable to the Charters:
-   Non P&I Club covered vessels

Owners to fill out following questionnaire:  (On nomination of final performers)

Name of Owner(s)
Name of Ship Managers / Operators
Classification Society
Date of Last Dry Docking
Date of expiry of continuous Hull survey
Date of expiry of continuous Engine survey
Date of expiry of Load line Certificate
Annual:
Full Term:
Date of expiry of Safety Construction Certificate
Annual:
Full Term:
Date of expiry of Safety Equipment Certificate
Annual:
Full Term:
Date of expiry of International Oil Pollution Prevention Certificate
Annual:
Full Term:
Date of expiry of Safety Radio Certificate
Annual:

Last Six Cargoes:

| Cargo | Port | Arrived | Sailed |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |

(To be stated on final nomination performing vessels)

Hatch Sizes No. 1



2





HANSE SHIPPING
CORPORATION

Stowage Plan (preliminary) Holds 1-

### 3. CARGO QUANTITY

The cargo quantity covered by this contract consists out of about 3.600.000 metric tons, 10% more/less in vessels' option pig iron in bulk. Shipments to be carried out between December 2007 and December 2012 (both months included), about fairly spread, in lots of about 60.000 metric tons, 10% more/less in vessels' option.

### 4. LAY DAYS AND CANCELING DATES:

Laydays with 20 days spread to be mutually agreed monthly in advance of Shipment.

Laydays agree cannot be changed, unless otherwise agreed by both parties in writing (including telex or fax). The canceling date is the last layday

If it becomes obvious that the vessel will fail to be ready for loading before / on the above mentioned canceling date, Owners to notify Charters as soon as same gets to their attention. The Charters have the option to cancel or to maintain the intended cargo.

### 5. DEVIATION

Carrying vessel shall be sail and arrive at the port of discharging whit the normal and reasonable period of time. Any unreasonable deviation or delay is not allowed, it is understood that the vessel is allowed to proceed at economical speedy and bunker on usual route. Owners shall have the responsibility to advise Charters of accidents occurred as soon as which is know to Owners whilst begin en route. If Owners fail to give advice in time, any losses and charges incurred there from shall be for Owners' account. For the purpose of saving life or property of the vessel has liberty to sail with or without pilots to tow and assist vessel in distress and to deviate.

### 6. NOTICES

6.A    On sailing to the loading port, Master or the Owner shall provide a notice of vessel's ETA at loading port to both Shippers and Charters, such notice shall be given 8 days, 72 hours, 24 hours prior to vessel's expectative arrival at loading port or any time upon Charters request.

6.B    Master or Owner shall with the 72 hours notice inform Shippers about vessel's cargo plan with following details:
- Arrival and departure drafts
- Airdraft
- Ballast quantity on arrival and, if in cargo holds, how distributed.

3



HANSE SHIPPING
CORPORATION

- Time required for de-ballasting after berthing and loading sequences, Master or Owners shall also state in 72 hours notices, whether a "Gas Free Certificate" is required or not.

Unless otherwise instructed by Shippers, Master or Owners shall undertake that vessel be presented for berthing with minimum ballast with vessel's seaworthiness.

6.C        Owners should, on departure of the vessel from the loading port, inform Charters of the departure date, ETA China, loaded quantity of Pig Iron, quantity / of Pig Iron in each hold and estimated arrival draft.

6.D        Master of the vessel or Owners shall give Charters agent at discharge port and Charters respectively the following 5 notices of ETA of the vessel at the discharge port. The first notice to be given on departure loading port, then 72 hours, 48 hours, 24 hours prior to ETA

The first notice shall indicate the name of the vessel, the type and quantity of cargo the number of compartments.

## 7. LOADING AND DISCHARGING PORT

7.A        Charters to load the cargo free in and spout trimmed at one safe port one safe berth Rio de Janeiro, always afloat, free to risk / expenses to the Owners.

7.B        Upon completion of loading, the vessel shall proceed to:

1 Safe port / 1-2 safe Berth(s) Quingdao where Charters / Receivers / cosigns to discharge the entire cargo free of risk and expense to the vessel.

## 8. FREIGHT RATE

USD 37.00 (United States Dollars thirty seven 00/100) per intaken metric ton free in spout trimmed/free discharge. The freight is payable discountless in Switzerland on signing Bills of Lading. For voyage no.: 1 under this contract charterers to Swift 15% of the estimated freight into carriers' account (tbn) on charterers' acceptance of carriers' offer. The advance payment to be refunded by carriers to charterers on final freight payment for voyage no.: 1 by deduction from the freight payable. All payments to be made in free transferable US currency. A freight revision to be made between charterers and carriers every 12 months taking into consideration the development of the market and prevailing market conditions. First revision to be made one month prior to termination of the first 12 months shipping period. Procedure of such revision to be agreed upon within 3 months after commencement of shipments.

## 9. BUNKER ESCALATION

4



HANSE SHIPPING
CORPORATION

No bunker escalation clause applies to this Charger Party.

### 10. DEMURRAGE CLAUSE

Demurrage shall be calculated on the basis of the Statement of facts made by Agents at Loading and Discharging port(s) entrusted by Owners and mutually confirmed by Master and Loading Port Authorities.

**10.A**      Loading Port

At Loading port N.O.R. to be tendered atdnshinc. Whether in port or not, whether in berth or not, whether in free practique or not, whether custom cleared or not.

Laytime at loading and discharging port is non-reversible.

Loading Rate: 10.000 Metric Tons per day minimum of 24 consecutive hours, Sundays and Holidays is include, weather permitting.

Demurrage rate at Loading Port: USD 50,000.00 per day / rata.

**10.B**      Discharging Port

Demurrage rate at Discharging Port: USD 50,000.00 per day / rata.

**10.B.a**      Discharging Rate:

20.000 metric tons per day minimum of 24 consecutive running hours. Sundays/ Holidays included, weather permitting.

**10.B.b**      At discharging Port Qingdao, notice of readiness shall be tendered upon arrival atdnshinc, whether in port or not, whether in berth or not, whether in free practique or not, whether customs cleared or not, provided the vessel is ready for discharging. Laytime shall commence 24 hours after tendering the Notice of Readiness Sundays and Holidays included, unless sooner commenced. In such case actual time used will be counted as laytime.

**10.B.c**      The following time shall not count as laytime unless vessel already on demurrage:

- Time used for sailing from anchorage to till all fastened at the designated discharging berth. Time used for join inspection. Time used for draft survey during discharging.
- The stoppage caused by adjusting ballast (or de-ballasting)
- The stoppage caused by bad weather
- Stoppage or partial stoppage caused by Owners and Partial Stoppage as pro rata.



5

HANSE SHIPPING
CORPORATION

- Stoppage caused by Force Majeure.

**10.B.d**    Discharging shall complete upon the last grab of cargo leaving hatches.

**10.B.e**    The cargo on vessel shall be in grabs' reach. Vessel shall be guaranteed suitable for garb discharge. If the cargo is not accessible by means of grabs (including in hatches) any time shall be for Owners account.

**10.B.f**    Once the Vessel is on demurrage, it counts as per like laytime at discharge port.

**10.B.g**    The Vessel has the right, according to the rules and regulations of the port, to sail from discharging port at the first available tide (confirmed by pilot Station of the port) after completion of discharging, not matter laytime has been fully used or not.

## 11. FREIGHT/ DEMURRAGE

**11.A**    Full freight deemed to be earned on cargo being loaded and is not returnable whether vessel and/or cargo lost or not lost.

**11.B**    Demurrage, if any, to be settled within 30 days after completation of discharging and presentation of supporting documents.

## 12. OVERTIME LOADING AND DISCHARGING PORT

Overtime to be for account of party ordering same.
Overtime of the crew and officers on board shall be for Owners' account. The Vessel shall, if required, supply light for night work as on board free of expense to Charters.

## 13. TAXES AND DUES

- Any taxes / dues / wharfages on cargo and / or freight at loading and discharging ports shall be for charterers' account. Any taxes / dues / on vessel to be for Owners account. Charges for owners' account include:

1. Tonnage dues
2. Harbors dues berthing charges, pilotage, shifting, towage charges, mooring – unmooring charges, light dues.
3. Agence fees and others non compulsory miscellaneous services charge.

## 14. STEVEDORING DAMAGE AT LOADING PORT AND DISCHARGING PORT

Stevedore damage, if any, at loading- and discharging port shall be settled between port authorities, stevedores and Owners, but Charters will give all possible assistance to Owners in collecting any Stevedore damage Claims.

    6    



HANSE SHIPPING
CORPORATION

### 15. BILL OF LADING

Bill of Lading to be Congenbills. The Bills of Lading shall be signed by Master or Agents of Owners within 24 hours after completion of Loading , marked "Freight payable as per C/P"

### 16. ASSIGNMENT

Neither Owners nor Charters may assign the contract in whole or in part without prior written consent of the other party. Owners and Charters shall always remain responsible for the due fulfillment of this contract.

### 17. AGENTS

Carriers to appoint theirs Agents at loading and discharging port.

Once the Agents has been confirmed, Carriers shall inform Charters of their Agent at loading- and discharging port in time. Owners shall send to Charters by express mail, fax or e-mail attached the Statement of Facts of loading- and discharging ports within 5 business days after completion of loading or discharging.

### 18. GENERAL AVERAGE

In case of general average, the same shall be adjusted according to "York Antwerp Rules 1974 amended 1990". Should the vessel put into any port or ports due to leakage or damage incurred en route or in any port, the masters and Owners shall inform Charters without any delay.

### 19. WAR CANCELLATION CLAUSE

In the event of war or warlike operation involving either Japan, the United States of America, Great Britain, Russia, People's Republic of China, Brazil, Norway or the nation under the Flag of which any vessel performing under this contract is registered, and this, seriously affects Charter or Owners ability to perform or cost of performing theirs obligations under this contract, Charters or Owners may advise the others party, that they wish to cancel this particular voyage.

The parties shall then meet within thirty (30) days to decide whether this contract or any party of it shall be amended, suspended for ninety (90) days and failing agreement by the end of this ninety (90) days extension, the voyage in question shall be cancelled. If Major war breaks out between any two or more of the above mentioned countries directly affecting performing of this contract, both Owners and Charter shall have the right to cancel this contract.







HANSE SHIPPING
CORPORATION

### 20. BOTH-TO-BLAME COLLISION CLAUSE

Of Clause 23 of ASBATIME 1981 to apply to this contract.

### 21. NEW JASON CLAUSE

Of Clause 23 of ASBATIME 1981 to apply to this contract.

### 22. CLAUSE PARAMOUNT

All Bill of Lading under this contract shall include the following clause Paramount

Hagues Visby Rulles 1968 or similar legislation of the nation of destination shall be applicable.

### 23. WAR RISK

Clause 16 of Gencon (revision 1994) shall apply to this contract.

### 24. ARBITRATION

Any disputes arising under the contract shall be settled amicably. In case no such settlement can be reached, the matter of dispute shall be referred to three persons in London and according to English law. One chosen by each of the parties hereto and the third by the two so chosen, their decision or that of that two of then shall be final, and for the purpose of enforcing and award this agreement may be made a rule of the court. The arbitration shall be commercial men.

### 25. WAR RISK INSURANCE

War Risk Insurance on vessel if any shall be for Owners account

### 26. EXTRA INSURANCE

Free of Overage premium on cargo

### 27. LIEN

Owners shall have a lien cargo ocean freight dead freight, demurrage and general average contribution due the contract.

### 28. LANGUAGE / COMMUNICATION

It is agreed that the English language will be used in notice letters, cables and all others means of communications. All relevant communications between Charters and Owners shall be made trough Telex, telegram, fax or e-mail.



8



HANSE SHIPPING
CORPORATION

**29. HEADINGS**

The headings in the contract are for the purpose of convenience only and shall not limit or otherwise affect any of the terms or stipulations hereof. The contract is written in English and signed as performing contract

In witness whereof, this contract has been executed by and between Owners and Charters in two (2) Originals, one of each to be retained by Owners and Charters.

**THE CHARTERERS:**

Jadir Moreira barbosa
President

**THE CARRIERS:**

HANSE SHIPPING
CORPORATION

(Hans F. Bihn)

9

EXHIBIT 2





## Charter Party dated 08th of October 2007.

# M.V. "TBN"

**Charters:** Rede Gusa Minerações Ltda
Av. Raja Gabaglia # 1001 Conj. 408 – Belo Horizonte - Minas Gerais – Brazil

**Carriers:** Hanse Shipping Corporation, 40, Vogesenstrasse, CH 4056 - Basel, Switzerland.

This contract dated 08th of October 2007, is concluded by and between Rede Gusa Minerações Ltda, as Charters (hereinafter referred to as Charters), and Hanse Shipping Corporation as Carriers (hereinafter referred to as "Owners").

**WITNESSED THAT –**

This Charter Party whit Owners for the Shipment of Iron Ore from Santos-Guaruja to 1 good, safe, always accessible port Peoples' Republic of China excluding Up-River Ports declarable by Charterers prior to commencement of loading.

**1. DEFINITIONS**

In this contract, unless otherwise defined, the terms should have following meanings:

1.A "Ore" – means Iron Ore in Bulk loaded in accordance whit IMO/ local regulations.

1.B "Dollars" and "Cents" mean respectively dollars and cents in lawful money of the United States of America.

**2. VESSELS TO BE USED:**

Bulk Carriers of about 75.000 metric tons 10% +/- in vessels' option  Iron Ore capacity, classed highest Lloyds Register or equivalent, P&I Club covered, geared or gearless in Carriers' option, maximum 25 years of age. Vessels to be nominated by Carriers to Charters latest 20 days  prior to their expected arrival dates (ETA) within the agreed laydays.

1



The operating vessel shall be Owners controlled Bulk Carrier or Ore Carrier or OBO or Ore / Oil combination Carrier, Seaworthy, cargo worthy, tight, staunch and strong, suitable for intended voyage and suitable for ordinary grab discharging and shall be in the highest classification for vessel's of their age and type whit Lloyds Register or equivalent. All certificates of the vessel shall be valid till the voyage is complete. The vessel to be free of any overage premium.

The following vessels are not acceptable to the Charters:
- Non P&I Club covered vessels

Owners to fill out following questionnaire: (On nomination of final performers)

Name of Owner(s)
Name of Ship Managers / Operators
Classification Society
Date of Last Dry Docking
Date of expiry of continuous Hull survey
Date of expiry of continuous Engine survey
Date of expiry of Load line Certificate
Annual:
Full Term:
Date of expiry of Safety Construction Certificate
Annual:
Full Term:
Date of expiry of Safety Equipment Certificate
Annual:
Full Term:
Date of expiry of International Oil Pollution Prevention Certificate
Annual:
Full Term:
Date of expiry of Safety Radio Certificate
Annual:

Last Six Cargoes:

| Cargo | Port | Arrived | Sailed |
|-------|------|---------|--------|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |

(To be stated on final nomination performing vessels)

Hatch Sizes No. 1
Stowage Plan (preliminary) Holds 1-

2





HANSE SHIPPING
CORPORATION

## 3. CARGO QUANTITY

The cargo quantity covered by this contract consists out of about 4.500.000 metric tons, 10% more/less in vessels' option iron ore in bulk. Shipments to be carried out between December 2007 and December 2012 (both months included), about fairly spread, in lots of about 75.000 metric tons, 10% more/less in vessels' option.

## 4. LAY DAYS AND CANCELING DATES:

Laydays with 20 days spread to be mutually agreed monthly in advance of Shipments.

Laydays agree cannot be changed, unless otherwise agree by both parties in written form (including telex or fax). The canceling date is the last layday

If it becomes obvious that the vessel will fail to be ready for loading before / on the above mentioned canceling date, Owners to notify Charters as soon as same gets to their attention. The Charters have the option to cancel or to maintain the intended cargo.

## 5. DEVIATION

Carrying vessel shall be sail and arrive at the port of discharging whit the normal and reasonable period of time. Any unreasonable deviation or delay is not allowed, it is understood that the vessel is allowed to proceed at economical speedy and bunker on usual route. Owners shall have the responsibility to advise Charters of accidents occurred as soon as which is know to Owners whilst begin en route. If Owners fail to give advice in time, any losses and charges incurred there from shall be for Owners' account. For the purpose of saving life or property of the vessel has liberty to sail with or without pilots to tow and assist vessel in distress and to deviate.

## 6. NOTICES

6.A    On sailing to the loading port, Master or the Owner shall provide a notice of vessel's ETA at loading port to both Shippers and Charters, such notice shall be given 8 days, 72 hours, 24 hours prior to vessel's expected arrival loading port or any time upon Charters request.

6.B    Master or Owner shall with the 72 hours notice inform Shippers about vessel's cargo plan with following details:
       - Arrival and departure drafts
       - Airdraft
       - Ballast quantity on arrival and, if in cargo holds, how distributed.

3





HANSE SHIPPING
CORPORATION

- Time required for de-ballasting after berthing and loading sequences, Master or Owners shall also state in 72 hours notices, whether a "Gas Free Certificate" is required or not.

Unless otherwise instructed by Shippers, Master or Owners shall undertake that vessel be presented for berthing with minimum ballast with vessel's seaworthiness.

6.C     Owners should, on departure of the vessel from the loading port, inform Charters of the departure date, ETA China, loaded quantity of iron ore, in each hold and estimated arrival draft.

6.D     Master of the vessel or Owners shall give Charters agent at discharge port and Charters respectively the following 5 notices of ETA of the vessel at the discharge port. The first notice to be given on departure loading port, then 72 hours, 48 hours, 24 hours prior to ETA

The first notice shall indicate the name of the vessel, the type and quantity of cargo the number of holds.

## 7. LOADING AND DISCHARGING PORT

7.A     Charters to load the cargo free in and spout trimmed at one safe port one safe berth Santos-Guaruja, always afloat, free to risk / expenses to the Owners.

7.B     Upon completion of loading, the vessel shall proceed to:

1 Safe port / 1-2 safe Berth(s) P.R.C. (excluding Up-River Ports) in Charterers' option (declarable latest prior to commencement of loading) where Charterers / Receivers / consignees to discharge the entire cargo free of risk and expense to the vessel.

## 8. FREIGHT RATE

USD 37.00 (United States Dollars thirty seven 00/100) per intaken metric ton free in spout trimmed/ free discharge. The freight is payable discountless in Switzerland into carriers' account (to be nominated) on signing Bills of Lading. Payment to be made in free transferable United States currency. Under this contract charterers to Swift 15% of the estimated freight into carriers' account (tbn) on acceptance of carriers'offer. This advanced payment to be refunded by carriers on charterers' final freight payment by means of a correspondence freight deduction. A freight revision to be made between charterers and carriers every 12 months taking into consideration the development of the freight market and prevailing market conditions. First revision to be made one month prior to termination of the first 12 months shipping period. Procedure of such revision to be agreed upon within 3 months after commencement of shipments.

4

HANSE SHIPPING
CORPORATION



HANSE SHIPPING
CORPORATION

No bunker escalation clause applies to this charter party.

## 10. DEMURRAGE CLAUSE

Demurrage shall be calculated on the basis of the Statement of facts made by agents at loading- and discharging port provided by carriers and mutually confirmed by ship's command and agents .

**10.A**          Loading Port

At Loading port N.O.R. to be tendered atdnshine. Whether in port or not, whether in berth or not, whether in free practique or not, whether custom cleared or not.

Laytime at loading and discharging port is non-reversible.

Loading Rate: 10.000 metric tons per day of 24 consecutive hours, Sundays and Holidays included, weather permitting.

Demurrage rate at Loading Port: USD 50,000.00 per day / rata.

**10.B**          Discharging Port

Demurrage rate at discharging Port: USD 50,000.00 per day / rata.

**10.B.a**          Discharging Rate:

20.000 metric tons per day of 24 consecutive running hours. Sundays/ Holidays included, weather permitting.

**10.B.b**          At discharging port, notice of readiness shall be tendered upon arrival atdnshine, whether in port or not, whether in berth or not, whether in free practique or not, whether customs cleared or not, provided the vessel is ready for discharging. Laytime shall commence 12 hours after tendering the Notice of Readiness Sundays and Holidays included, unless sooner commenced. In such case actual time used will be counted as laytime.

**10.B.c**          The following time shall not count as laytime unless vessel already on demurrage:

- Time used for sailing from anchorage to till all fastened at the designated discharging berth. Time used for join inspection. Time used for draft survey during discharging.
- The stoppage caused by adjusting ballast (or de-ballasting)
- The stoppage caused by bad weather
- Stoppage or partial stoppage caused by owners
- Stoppage caused by Force Majeure.



HANSE SHIPPING
CORPORATION

5





**10.B.d**    Discharging shall complete upon the last grab of cargo leaving hatches.

**10.B.e**    The cargo on vessel shall be in grabs' reach. Vessel shall be guaranteed suitable for garb discharge.

**10.B.f**    Once the Vessel is on demurrage/always on demurrage.

**10.B.g**    The Vessel has the right, according to the rules and regulations of the port, to sail from discharging port at the first available tide (confirmed by pilot station of the port) after completion of discharging, whether or not laytime has been fully used.

## 11. PAYMENT OF FREIGHT

**11.B**    Freight deemed to be discountless and non returnable earned on completion of loading whether vessel and/or cargo lost or not lost.

**11.C**    Demurrage, if any, to be settled within 30 days after occurrence and presentation of supporting documents (Statement of Facts and Timesheet).

## 12. OVERTIME LOADING AND DISCHARGING PORT

Overtime to be for account of party ordering same.
Overtime of crew and officers on shall be for Owners' account. The Vessel shall, if required, supply light for night work as on board free of expense to charterers.

## 13. TAXES AND DUES

- Any taxes / dues / wharfages on cargo and / or freight at loading- and discharging ports shall be for charterers' account. Any taxes / dues / on vessel to be for Owners account:.

Charges for owners' account are not limited but include:

1. Tonnage dues
2. Harbors dues berthing charges, pilotage, shifting, towage charges, mooring – unmooring charges, light dues.
3. Agency fees and others non compulsory miscellaneous services charge.

## 14. STEVEDORING DAMAGE AT LOADING PORT AND DISCHARGING PORT

Stevedore damage, if any, at loading port shall be settled between port authorities and Owners, but Charters will lend all possible assistance to Owners in settling any stevedore damage claims.

6



Stevedore damage, if any, at loading – and discharging port shall be settled directly between owners and stevedores / port authorities. Charters will assist Owners in settling any stevedore damage claims.

## 15. BILL OF LADING

Bill of Lading to be Congenbills. The Bills of Lading shall be signed by Master or Agents of Owners within 24 hours after completion of loading and kept at shippers' disposal provided freight has been settled according to terms/conditions of the contract. Bills of Lading to be marked "Freight payable as per Charter Party".

## 16. ASSIGNMENT

Neither Owners nor Charters may assign the contract in whole or in part without prior written consent of the other party. Owners and Charters shall always remain responsible for the due fulfillment of this contract.

## 17. AGENTS

Carriers to appoint theirs Agents at loading and discharging port.

Once the Agent has been confirmed, Carriers shall inform Charterers of their Agents' nomination at loading- and discharging port in time. Owners or their agents shall send to Charterers by express mail, fax or e-mail attachment the statement of facts of loading- and discharging ports within 5 business days after completion of loading or discharging.

## 18. GENERAL AVERAGE

In case of general average, the same shall be adjusted according to "York Antwerp Rules 1974 amended 1990". Should the vessel put into any port or ports due to leakage or damage incurred en route or in any port, the masters and Owners shall inform Charters without any delay.

## 19. WAR CANCELLATION CLAUSE

In the event of war or warlike operation involving either Japan, the United States of America, Great Britain, Russia, People's Republic of China, Brazil, Norway or the nation under the Flag of which any vessel performing under this contract is registered, and this, seriously affects Charter or Owners ability to perform or cost of performing theirs obligations under this contract, Charters or Owners may advise the others party, that they wish to cancel this particular voyage.

The parties shall then meet within thirty (30) days to decide whether this contract or any party of it shall be amended, suspended for ninety (90) days and failing agreement by the end of this ninety (90) days extension, the voyage in question shall be cancelled. If Major war breaks out between any two or more of the above

7





mentioned countries directly affecting performing of this contract, both Owners and Charter shall have the right to cancel this contract.

## 20. BOTH-TO-BLAME COLLISION CLAUSE

Of Clause 23 of ASBATIME 1981 to apply to this contract.

## 21. NEW JASON CLAUSE

Of Clause 23 of ASBATIME 1981 to apply to this contract.

## 22. CLAUSE PARAMOUNT

All Bill of Lading under this contract shall include the following clause Paramount

Hague Visby Rules 1968 or similar legislation of the nation of destination shall be applicable.

## 23. WAR RISK

Clause 16 of Gencon (revision 1994) shall apply to this contract.

## 24. ARBITRATION

Any disputes arising under the contract shall be settled amicably. In case no such settlement can be reached, the matter of dispute shall be referred to three persons in London and according to English law. One chosen by each of the parties hereto and the third by the two so chosen, their decision or that of that two of then shall be final, and for the purpose of enforcing and award this agreement may be made a rule of the court. The arbitration shall be commercial men.

## 25. WAR RISK INSURANCE

War Risk Insurance on vessel if any shall be for Owners account

## 26. EXTRA INSURANCE

Free of Overage premium on cargo

## 27. LIEN

Owners shall have a lien cargo ocean freight dead freight, demurrage and general average contribution due the contract.

## 28. LANGUAGE / COMMUNICATION

HANSE SHIPPING
CORPORATION



It is agreed that the English language will be used in notice letters, cables and all others means of communications. All relevant communications between Charters and Owners shall be made trough Telex, telegram, fax or e-mail.

## 29. HEADINGS

The headings in the contract are for the purpose of convenience only and shall not limit or otherwise affect any of the terms or stipulations hereof. The contract is written in English and signed as performing contract

In witness whereof, this contract has been executed by and between Owners and Charters in two (2) Originals, one of each to be retained by Owners and Charters.

## 30. CONFIDENTIALITY

Negotiations and contents of this contract to be treated as strictly confidential.

Belo Horizonte & Basel October............./08-70- -...., 2007

**THE CHARTERERS:**                                    **THE CARRIERS:**

Jadir Moreira barbosa                                  HANSE SHIPPING
President                                              CORPORATION
                                                       (Hans F. Bihn)

9



EXHIBIT 3



**HANSE SHIPPING CORPORATION**
**Hans F Bihn**

On Freight Contractors / Operators
Vogesenstrasse 40 – CH-4068 Basel (Switzerland)
Tel.: + 41 61 322 7451/ Fax: + 41 61 322 7438 /Mob: + 41 79 788 1729
E-mail: swiss_charter@yahoo.co.uk / swiss_tankers@yahoo.co.uk
SKYPE: swisstankers

Basel(Switzerland), October 4th,2007.

Messrs.
Rede Gusa Mineracoes Ltda
Av. Raja Gabaglia  No.:1001 Conj. 408
Belo Horizonte – Minas Gerais
Brazil

### I N V O I C E  RD J  P I 101-07

Ladies and Gentlemen,

**Ref.: Contract Pig Iron,- C/P dated Belo Horizonte/Basel 02-10-07 – Rio de Janeiro/Qingdao – Voyage 1**

US$

To: Refundable payment on account of the estimated freight for
Voyage one, adjustable on final freight payment:

60.000 metric tons pig iron at US$ 37,- = US$ 2.220.000,-
whereof 15%                                    =                                    **333.000,-**

E.&O.e.

Please Swift transfer the afore mentioned amount to:

Bank            : CREDIT SUISSE, Urania Strasse  4, CH-8070, Zurich/Switzerland
Bank Clearing   : 4879
Swift Code      : CRESCHZZ80L
IBAN No.        : CH 42 0487 9046 6621 0200 0
Account         : USD 0879-842656-62
Beneficiary     : H F Bihn/HSC
Ref.            : Redegusa  1

For easier tracing of the transfer please e-mail attach the bank transfer slip or transfer number
To swiss_charter@yahoo.co.uk

Sincerely

(H F Bihn)
HANSE SHIPPING
CORPORATION

1

EXHIBIT 4

# HANSE SHIPPING CORPORATION
### Hans F Bihn

Freight Contractors / Operators
Vogesenstrasse 40 – CH-4068 Basel (Switzerland)
Tel.: + 41 61 322 7451/ Fax: + 41 61 322 7438 /Mob: + 41 79 788 1729
E-mail: swiss_charter@yahoo.co.uk / swiss_tankers@yahoo.co.uk
SKYPE: swisstankers

Basel(Switzerland), October 8th, 2007.

Messrs.
Rede Gusa Mineracoes Ltda
Av. Raja Gabaglia N.: 1001 Conj. 408
Belo Horizonte – Minas Gerais
Brazil

### I N V O I C E - R G M - I.O. – 102 - 07

Ladies and Gentlemen,

**Ref.: Contract Iron Ore, - C/P dated Belo Horizonte/Basel 08-10-07 – Santos-Guaruja/1 Port P.R.C. – Voyage 1**

**US$**

To: Refundable payment on account of the estimated freight for
Voyage 1, adjustable on final freight payment:

75.000 metric tons iron ore at US$ 37,- = US$ 2.775.000,-
whereof 15%

**416.2S0,-**

E.&O.E.

Please Swift transfer the afore mentioned amount to:

Bank          : CREDIT SUISSE, Urania Strasse 4, CH-8070, Zurich/ Switzerland
Bank Clearing: 4879
Swift Code    : CRESCHZZ80L
IBAN No.      : CH 42 0487 9046 6621 0200 0
Account       : USD 0879-842656-62
Beneficiary   : H F Bihn/HSC
Reference     : Redegusa Ore 1

For easier tracing of the transfer please e-mail attach the bank transfer slip or transfer number to
swiss_charter@yahoo.co.uk

Sincerely,

(H F Bihn)
HANSE SHIPPING
CORPORATION

1

EXHIBIT 5

 **MAIL** Classic

Print - Close Window

| | |
|---|---|
| **Date:** | Tue, 18 Mar 2008 07:26:02 -0700 (PDT) |
| **From:** | "Adriano Marghieri" <mcinterbusiness@yahoo.com.br> |
| **Subject:** | Res: Att.: Dr. Jadir Moreira Barbosa - personally - Contracts R.G.M./H.S.C. - final proposal |
| **To:** | "Swiss Chartering" <swiss_charter@yahoo.co.uk> |
| **CC:** | "Rogério" <viasollo@terra.com.br> |

Dear Mr. Hans



Regarding our maritime contract, we have intention in perform all contracts between our companies, The Iron Ore contract we will use (and pay) after our Maritime Terminal in Guaraujá are ready for receive vessels and the Iron Ore, and our actual prevision is for September 08 in maximum December 08. Before this date we don't can load Iron Ore and we don't need vessels for Iron Ore , if you want we can cancel this contract now.

Pig Iron Contract, we have the cargo ready for shipment and we will use the Rio de Janeiro Sea Port (Triumfo Terminal) and the export company will be Ironmar we export for more than 40 year in this export channel.

We can perform our contract immediately but we don't can pay the sea freight in advance and we would like pay the sea freight like a normal company in a normal process, we pay after the cargo are complete loaded and you will send the vessel for us after receive all confirmations that the cargo is ready in the sea port like a normal process.

If you don't want work in a normal market conditions, its Ok is your choice and we can cancel all contract immediately to.

In your e-mail is evident to us that you don't trust in our company, and in every time I explain you that we don't want work with a single Freight Company, we want work
with a Maritime Partner, in our opinion partners play in clean ways with Trust without trusty we don't can nothing.

So Mr. Hans, is your option again (we give this option for you in several times) if you want cancel the contracts is fine, if you want perform the contract is ok we will send you all cargo details, estimated date for shipment, you will nominate the vessel, and the cargo will be loaded.

We are waiting your comments by e-mail.

Best Regards


Adriano Marghieri

Grupo Rede Gusa

EXHIBIT 6

 **MAIL**
UK & IRELAND  Classic

| | |
|---|---|
| **final proposal** | Thursday, 20 March, 2008 1:55 PM |

**From:** "Adriano Marghieri" <mcinterbusiness@yahoo.com.br>
**To:** "Swiss Chartering" <swiss_charter@yahoo.co.uk>
**Cc:** "Rogério" <viasollo@terra.com.br>

Dear Mr. Hans

We spoke with Mr. Rogério and he told us that you are try mantain ours contracts for maritime freight without payment in advance, and for this the prices per ton will be adjusted. We agree with this price adjustment becouse the payment conditions are changed, we are waiting your final amendment and new prices for start the shipments.

Thank you very much

Best Regards

Adriano Marghieri
Grupo Rede Gusa


----- Mensagem original ----
De: Swiss Chartering <swiss_charter@yahoo.co.uk>
Para: Adriano Marghieri <mcinterbusiness@yahoo.com.br>;
gruporedegusa@gruporedegusa.com.br
Cc: viasollo@terra.com.br
Enviadas: Terça-feira, 18 de Março de 2008 12:01:23
Assunto: Re: Res: Att.: Dr. Jadir Moreira Barbosa - personally - Contracts R.G.M./H.S.C. - final proposal

Dear Mr Marghieri,

thanks for your prompt reaction. Unfortunately it does not  react on  or reply our questions. We would like to remind you that we have 2 signed contracts obligations of which your company has to meet and fulfil. What you are trying to do is called "backtrading", i.e. changing agreed conditions solely in your favour or cancel existing contracts without paying indemnities. This does not work.

We have submitted to you our proposal to assist you in settling your companie's problems. If this will be accepted we will be fair partners. If not, you have to face the consequences.

Kind regards

EXHIBIT 7

Charterers: Rede Gusa Mineracoes
AV. RajaGabagliaNo.: 1001 Conj. 408 Belo
Horizonte - Minas Gerais -Brazil

Carriers: Hanse Shipping Corporation

Hans F Bihn, 40, Vogesenstrasse

CH-4056 Basel/ Switzerland (or their nominee)

This contract dated 08 of April 2008, is concluded by and between Rede Gusa Mineracoes Ltda, äs Charters (hereinafter referred to as Charterers), and Hanse Shipping Corporation as Carriers.

**WITNESSED THAT -**

This Charter Party contains the shipments of pig iron from Rio de Janeiro to Qingdao, Peoples[1] Republic of China.

## 1. DEFINITIONS

In this contract, unless otherwise defined, die terms should have following meanings:

1.A "Pig Iron" - means Pig Iron in Bulk loaded in accordance whit IMO/ local regulations.

I .B "Dollars" and "Cents" mean respectively dollars and cents in lawful money of the United States of America.

## 2. VESSELS TO BE USED:

Bulk Carriers of about 60.000 mtons 10% +/- in vessels' Option pig iron capacity, classed highest Lloyds Register or equivalent, P&I Club covered, geared or gearless in carriers' Option, maximum 25 years of age.

Vessels to be nominated by carriers to charterers latest 10 days prior to their expected date of arrival, but within the agreed laydays.

The vessel shall be owners controlled bulk carrier or ore / oil combination carrier, seaworthy, cargo worthy, tight, staunch and strong, suitable for intended voyage and suitable for

ordinary grab discharging and shall be classed Lloyds Register or equivalent and P&I Club covered. All certificates of the vessel shall be valid during the complete duration of the respective voyage. The vessel to be free of any overage premium.

Owners to fill out following questionnaire: (On nomination of final performers)

Name of Owner(s)
Name of Ship Managers / Operators
Classification Society
Date of last dry docking
Date of expiry of continuous hull survey certificate
Date of expiry of continuous engine survey certificate
Date of expiry of load line certificate
Date of expiry of Safety Construction Certificate
Date of expiry of Safety Equipment Certificate
Date of expiry of International Oil Pollution Prevention Certificate
Date of expiry of Safety Radio Certificate

Last six Cargoes:

| Cargo: | Loadport: | Arrived: | Sailed: |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |

(To be stated on final nomination of performing vessels)

Hatch sizes :

Preliminary stowage plan (to be submitted to charterers through vessels' agents after final nomination of the performing vessel for the respective voyage.

## 3. CARGO QUANTITY

The cargo quantity covered by this contract consists out of about 3.600.000 metric tons, 10% more/less in vessels' Option pig iron in bulk. Shipments to be carried out between May 2008 and April 2013 (both months included), about fairly spread, in lots of about 60.000 metric tons, 10% more/less in vessels' Option.

## 4. LAYDAYS AND CANCELLING DATES:

Laydays with 20 days spread to be mutually agreed monthly in advance of shipments

Laydays agreed cannot be changed, unless otherwise agreed by both parties in writing (e-mail or fax). The cancelling date is the last layday

If it becomes obvious that the vessel will fail to be ready for loading before or on the above mentioned cancelling date, carriers to notify charterers äs soon äs same gets to their attention. The Charters have the Option to cancel or to maintain the intended shipment

## 5. DEVIATION

Carrying vessels shall sail and arrive at the port of discharging within the normal and reasonable period of time. Any unreasonable deviation or delay is not allowed. It is understood that the vessel is allowed to proceed at economical speed on usual routes. Owners shall have the responsibility to advise charterers of accidents, if occurred as soon as such event is known to owners. For the purpose of saving life or property the vessel has liberty to deviate from the intended route to tow and/or assist vessels in distress.

## 6. Notices

6.A    On sailing to the loading port, master or the owners/carriers shall deliver a vessel's ETA at loading port to Charterers. Such notice shall be given 8 days, 72 hours, 24 hours prior to vessel's eta at loading port or at any time upon charterers' request

6.B    Master or carriers shall together the 72 hours notice inform charterers about vessel's cargo plan with following approximate details:
- Arrival and departure drafts
- Air draft
- Ballast quantity on arrival.

4

Time required for de-ballasting after berthing and loading sequences not to count as laytime provided loading operations have to be interrupted. Master or Owners shall also state with the 72 hours notices, whether a "Gas Free Certificate" is required.

Unless otherwise instructed by charterers, master shall undertake that vessel be presented for berthing with minimum ballast for vessel's seaworthiness.

6.C     Carriers should on departure of vessel from loading port, inform Charters of the departure date, ETA discharging port, quantity loaded, and vessel's estimated draught on arrival.

6JD     Master of the vessel and carriers shall provide charterers and vessel's agents at discharging port 7/5/3/27 days and 24/12 hours arrival notice.

## 7. LOADING AND DISCHARGING PORT

7.A     Charterers to load the cargo free in and spout trimmed at one safe port one safe berth Rio de Janeiro, always afloat, free of risk / expense to the vessel.

7.B     After completion of loading, the vessel shall proceed to:

l Safe port /1 safe berth Qingdao where Charters / receivers / consignees to discharge the entire cargo free of risk and expense to the vessel.

## 8. FREIGHT RATE

USD 50,- (United States Dollars fifty 00/100) per intaken metric ton free in sput trimmed/free discharge. The freight is payable discountless in Switzerland on signing Bills of Lading. Payment to be made in Switzerland in transferable US currency. A freight revision and adjustment for each year during the life time of this contract to be made between charterers and carriers every 12 months taking into consideration the prevailing market conditions. First revision/ adjustment to be made one month prior to termination of the first 12 months shipping period. Procedure of such revision to be agreed upon within 3 months after commencement of shipments

## 9. Bunker Escalation clause

To be agreed upon on nomination of vessel.

HANSE SHIPPING CORPORATION

## 10. DEMURRAGE CLAUSE

Demurrage shall be calculated on the basis of the Statement of facts drawn up by the agents at loading and discharging port, signed by the master and charterers' representative and the timesheet resulted thereof calculated and drawn up by carriers

**10 A.**  Loading Port

At Loading port N.O.R. to be tendered atdnshinc, whether in port or not, whether in berth or not, whether in free practique or not, whether custom cleared or not

Laytime at loading and discharging port is non-reversible.

Loading Rate: 10.000 metric tons per day of 24 consecutive running hours, Sundays and Holidays included weather permitting.

Demurrage rate at loading Port: USD 50,000.00 per day / rate.

**10 B.**  Discharging Port

Demurrage rate at Discharging Port USD 50,000.OOperday/rata.

Discharging Rate:

20.000 metric tons per day of 24 consecutive running hours. Sundays/ Holidays included, weather permitting.

At discharging Port Qingdao, notice of readiness shall be tendered upon arrival atdnshinc, whether in port or not, whether in berth or not, whether in free practique or not, whether customs cleared or not, provided the vessel is ready for discharging. Laytime shall commence 12 hours after tendering the notice of readiness Sundays and Holidays included, unless sooner commenced. In such case actual time used to count.

The following time shall not count as laytime unless vessel already on

Demurrage:

Time used for sailing from anchorage to till au fastened at the designated discharging berth. Time used for joint inspection. Time used for draft survey during discharging.
-The stoppage used by adjusting(or de-ballasting)unless discharging operations continue.
- The stoppage caused by bad weather, unless vessel already on demurrage.
- Stoppage or partial stoppage caused by the vessel.

Discharging shall complete upon the last grab of cargo left holds.

The cargo on vessel shall be in grabs' reach as far as possible. Vessel shall be guaranteed suitable for grab discharge. Charterers'/stevedores' option to use rubber wheeled bobcats to place remnants of cargo into to reach of grabs.

Once on demurrage, always on demurrage.

The Vessel has the right, according to the rules and regulations of the port, to sail from discharging port at the first available tide (confirmed by pilot Station of the port) after completion of discharging irrespective whether the time allowed for discharging has been used or not.

## 11. FREIGHT/ DEMURRAGE

1 1. A  Full freight deemed to be earned on cargo being loaded and is not returnable whether vessel and/or cargo lost or not lost.

1 1 .B Demurrage, if any, to be settled within 30 days after completion of discharging

presentation of supporting documents.

## 12. OVERTIME AT LOADING- AND DISCHARGING PORT

Overtime to be for account of party ordering same
Overtime of the crew and officers on board always to be for Owners[1] account .The Vessel shall, if required, supply light for night wok as on board free of expense to Charterers/ Shippers/Receivers.

## 13. TAXES AND DUES

- Any taxes / dues/ wharfages on cargo and / or freight at loading- and discharging ports shall be for charterers[1] account. Any taxes / dues /on vessel to be for owners[3] account including: Tonnage dues based on GRT/NRT, harbour dues, berthing charges, pilotage, shifting (alongside quay), towage charges (in-/outbound), mooring-/unmooring charges (first berthing-last unberthing), light dues, agency fees and other non compulsory service charges ordered by the master of the vessel.

## 14. STEVEDORING DAMAGE AT LOADING PORT AND DISCHARGING PORT

Stevedore damage, if any, at loading- and discharging port shall be settled between port authorities, stevedores and owners, but charterers to give all possible assistance to Owners in settling any stevedore damage claims of the vessel.

TRANSE SHIPPING CORPORATION

## 15. BILL OF LADING

Bill of Lading to be Congenbills. The Bills of Lading shall be signed by master or agents of owners (provided authorized) on completion of loading, marked "Freight payable as per Charter Party".

## 16. ASSIGNMENT

Neither carriers nor charterers may assign the contract in whole or in part without prior written consent of the other party. In either case carriers and charterers shall always remain responsible for the due fulfilment of this contract.

## 17. AGENTS

Carriers to appoint their agents at loading- and discharging port.

Once the agents have been confirmed, carriers shall inform charterers of their agents at the ports. Carriers or their agents shall send to charterers by express mail, fax or e-mail the statements of facts of the loading- respectively the discharging port within 5 business days after completion of loading and discharging.

## 18. GENERAL AVERAGE

In case of General Average adjustment to take place according to York Antwerp Rules 1974, amended 1990. Should the vessel be put into any port or ports due to an average incurred en route to loading- or discharging port, the master and carriers shall inform charterers as soon as possible without delay.

## 19. WAR CANCELLATION CLAUSE

in the event of war involving either Japan, the United States of America, Great Britan Russia, People's Republic of China, Brazil or the nation under the Flag of which any vessel performing under this contract is registered, and this, seriously affects charterers or carriers ability to perform or the cost of performing theirs obligations under this contract, charterers or carriers may advise the others party, that they wish to cancel this particular voyage.

The parties shall then meet within about thirty days to decide whether this contract or any part of it shall be amended or suspended for ninety (90) days. If the parties fail to agree to any solution offered by either party during the course or at the end of the 90 days suspension time, the voyage in question is considered to be cancelled.

In the event of a declared war between any of the abovementioned countries directly effecting the performance of this contract, both, charterers and carriers have the option of cancelling this contract.

*HANSE SHIPPING CORPORATION*

**20. BOTH-TO-BLAME COLLISION CLAUSE**

Clause 23 of ASBATIME 1981 to apply to this contract.

**21. NEW JASON CLAUSE**

Clause 23 of ASBATIME 1981 to apply to this contract

**22. CLAUSE PARAMOUNT**

All Bill of Lading under this contract to include the following clause Paramount:
Hagues Visby Rules 1968 or similar legislation of the country of destination shall   be applicable

**23. .WAR RISK**

Clause 16 of Gencon C/P (revision 1994) shall apply to this contract.

**24. ARBITRATION**

Any disputes arising under the contract shall be settled amicably. In case no such settlement can be reached, the matter of dispute shall be referred to three persons in London and according to English law. One chosen by each of the parties hereto and the third by the two so chosen, their decision or that of that two of then shall be final, and for the purpose of enforcing and award this agreement may be made a rule of the court .The arbitrators shall be commercial persons.

**25. WAR RISK  INSURANCE**

War Risk Insurance on vessel if any shall be for owners' account.

**26. EXTRA INSURANCE ON CARGO**

The vessel to be free of extra insurance premium on cargo.

**27. LIEN**

Owners shall have a lien cargo ocean freight dead freight, demurrage and general average contribution due the under this contract

**28. LANGUAGE / COMMUNICATION**

It is agreed that the English language will be used in notice letters, cables and all others means of Communication. All relevant Communications between Charters and Owners shall be made trough Telex, telegram, fax or e-mail.

9

**29. HEADINGS**

The headings in tfae contract are for the purpose of convenience only and shall not limit or otherwise affect any of the terms or stipulations hereof. The contract is written in English and signed äs performing contract

In witness whereof, this contract has been executed by and between carriers and

Charterers in two (2) originals, one of each to be retained by carriers and charterers.

Belo Horizonte (Brazil) / Basel (Switzerland), April...................,2008.

**THE CHARTERERS:**                    **THE CARRIERS:**

EXHIBIT 8

Charterers: Rede Gusa Mineracoes
         AV. RajaGabagliaNo.: 1001 Conj. 408 Belo
         Horizonte - Minas Gerais -Brazil

Carriers: Hanse Shipping Corporation

         Hans F Bihn, 40, Vogesenstrasse

         CH-4056 Basel/ Switzerland (or their nominee)

This contract dated 08 of April 2008, is concluded by and between Rede Gusa Mineracoes Ltda, äs Charters (hereinafter referred to as Charterers), and Hanse Shipping Corporation as Carriers.

**WITNESSED THAT -**

This Charter Party contains the shipments of iron ore from Santos-Guaruja to one good, safe, always accessible port Peoples' Republic of China, excluding Up-River Ports, declarable by charterers prior to commencement of loading.

### 1. DEFINITIONS

In this contract, unless otherwise defined, die terms should have following meanings:

1.A " Iron Ore" - means Iron in bulk loaded in accordance whit IMO/ local regulations.

I .B "Dollars" and "Cents" mean respectively dollars and cents in lawful money of the United States of America.

### 2. VESSELS TO BE USED:

Bulk Carriers of about 75.000 mtons 10% +/- in vessels' Option iron ore capacity, classed highest Lloyds Register or equivalent, P&I Club covered, geared or gearless in carriers' Option, maximum 25 years of age.

Vessels to be nominated by carriers to charterers latest 10 days prior to their expected date of arrival, but within the agreed laydays.

The vessel shall be owners controlled bulk carrier or ore / oil combination carrier, seaworthy, cargo worthy, tight, staunch and strong, suitable for intended voyage and suitable for

ordinary grab discharging and shall be classed Lloyds Register or equivalent and P&I Club covered. All certificates of the vessel shall be valid during the complete duration of the respective voyage. The vessel to be free of any overage premium.

Owners to fill out following questionnaire: (On nomination of final performers)

Name of Owner(s)
Name of Ship Managers / Operators
Classification Society
Date of last dry docking
Date of expiry of continuous hull survey certificate
Date of expiry of continuous engine survey certificate
Date of expiry of load line certificate
Date of expiry of Safety Construction Certificate
Date of expiry of Safety Equipment Certificate
Date of expiry of International Oil Pollution Prevention Certificate
Date of expiry of Safety Radio Certificate

Last six Cargoes:

| Cargo: | Loadport: | Arrived: | Sailed: |
| --- | --- | --- | --- |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |

(To be stated on final nomination of performing vessels)

Hatch sizes :

Preliminary stowage plan (to be submitted to charterers through vessels' agents after final nomination of the performing vessel for the respective voyage.

## 3. CARGO QUANTITY

The cargo quantity covered by this contract consists out of about 4.500.000 metric tons, 10% more/less in vessels' option iron ore in bulk. Shipments to be carried out between December 2008 and November 2013 (both months included), about fairly spread, in lots of about 75.000 metric tons, 10% more/less in vessels' option.

## 4. LAYDAYS AND CANCELLING DATES:

Laydays with 20 days spread to be mutually agreed monthly in advance of shipments

Laydays agreed cannot be changed, unless otherwise agreed by both parties in writing (e-mail or fax). The cancelling date is the last layday

If it becomes obvious that the vessel will fail to be ready for loading before or on the above mentioned cancelling date, carriers to notify charterers as soon as same gets to their attention. The Charters have the Option to cancel or to maintain the intended shipment

## 5. DEVIATION

Carrying vessels shall sail and arrive at the port of discharging within the normal and reasonable period of time. Any unreasonable deviation or delay is not allowed. It is understood that the vessel is allowed to proceed at economical speed on usual routes. Owners shall have the responsibility to advise charterers of accidents, if occurred as soon as such event is known to owners. For the purpose of saving life or property the vessel has liberty to deviate from the intended route to tow and/or assist vessels in distress.

## 6. Notices

6.A     On sailing to the loading port, master or the owners/carriers shall deliver a vessel's ETA at loading port to Charterers. Such notice shall be given 8 days, 72 hours, 24 hours prior to vessel's eta at loading port or at any time upon charterers' request

6.B     Master or carriers shall together the 72 hours notice inform charterers about vessel's cargo plan with following approximate details:
- Arrival and departure drafts
- Air draft
- Ballast quantity on arrival.

4

HANSE SHIPPING CORPORATION

Time required for de-ballasting after berthing and loading sequences not to count as laytime provided loading operations have to be interrupted. Master or Owners shall also state with the 72 hours notices, whether a "Gas Free Certificate" is required.

Unless otherwise instructed by charterers, master shall undertake that vessel be presented for berthing with minimum ballast for vessel's seaworthiness.

6.C    Carriers should on departure of vessel from loading port, inform Charters of the departure date, ETA discharging port, quantity loaded, and vessel's estimated draught on arrival.

6.D    Master of the vessel and carriers shall provide charterers and vessel's agents at discharging port 7/5/3/27 days and 24/12 hours arrival notice.

## 7. LOADING AND DISCHARGING PORT

7.A    Charterers to load the cargo free in and spout trimmed at one safe port one safe berth Santos-Guaruja, always afloat, free of risk / expense to the vessel.

7.B    After completion of loading, the vessel shall proceed to:

l safe port /1 safe berth P.R.C. (excluding Up-River ports) where Charterers / receivers / consignees to discharge the entire cargo free of risk and expense to the vessel.

## 8. FREIGHT RATE

USD 50,- (United States Dollars fifty 00/100) per intaken metric ton free in sput trimmed/free discharge. The freight is payable discountless in Switzerland on signing Bills of Lading. Payment to be made in Switzerland in transferable US currency. A freight revision and adjustment for each year during the life time of this contract to be made between charterers and carriers every 12 months taking into consideration the prevailing market conditions. First revision/ adjustment to be made one month prior to termination of the first 12 months shipping period. Procedure of such revision to be agreed upon within 3 months after commencement of shipments

## 9. Bunker Escalation clause

To be agreed upon on nomination of vessels.

CONSE SHIPPING CORPORATION

## 10. DEMURRAGE CLAUSE

Demurrage shall be calculated on the basis of the Statement of facts drawn up by the agents at loading and discharging port, signed by the master and charterers' representative and the timesheet resulted thereof calculated and drawn up by carriers.

10 A.        Loading Port

At Loading port N.O.R. to be tendered atdnshinc, whether in port or not, whether in berth or not, whether in free practique or not, whether custom cleared or not

Laytime at loading and discharging port is non-reversible.

Loading Rate: 10.000 metric tons per day of 24 consecutive running hours, Sundays and Holidays included, weather permitting.

Demurrage rate at loading Port: USD 50,000.- per day / rate.

10 B.        Discharging Port

Demurrage rate at discharging Port USD 50,000.- perday/rata.

Discharging Rate:

20.000 metric tons per day of 24 consecutive running hours. Sundays/ Holidays included, weather permitting.

At discharging port notice of readiness shall be tendered upon arrival atdnshinc, whether in port or not, whether in berth or not, whether in free practique or not, whether customs cleared or not, provided the vessel is ready for discharging. Laytime shall commence 12 hours after tendering the notice of readiness Sundays and Holidays included, unless sooner commenced. In such case actual time used to count.

The following time shall not count as laytime unless vessel already on

Demurrage:

 Time used for sailing from anchorage to till berthed at the designated discharging berth. Time used for joint inspection. Time used for draft survey during discharging.
-The stoppage used by adjusting(or de-ballasting)unless discharging operations continue.
- The stoppage caused by bad weather, unless vessel already on demurrage.
- Stoppage or partial stoppage caused by the vessel.
- Stoppage caused by Force Majeure.

Discharging shall complete upon the last grab of cargo left holds.

The cargo on vessel shall be in grabs' reach as far as possible. Vessel shall be guaranteed suitable for grab discharge. Charterers'/stevedores' option to use rubber wheeled bobcats to place remnants of cargo into to reach of grabs.

Once on demurrage, always on demurrage.

The Vessel has the right, according to the rules and regulations of the port, to sail from discharging port at the first available tide (confirmed by pilot Station of the port) after completion of discharging irrespective whether the time allowed for discharging has been used or not.

## 11. FREIGHT/ DEMURRAGE

1 1. A   Full freight deemed to be earned on cargo being loaded and is not returnable whether vessel and/or cargo lost or not lost.

1 1 .B Demurrage, if any, to be settled within 30 days after completion of discharging

presentation of supporting documents.

## 12. OVERTIME AT LOADING- AND DISCHARGING PORT

Overtime to be for account of party ordering same
Overtime of the crew and officers on board always to be for Owners[1] account .The Vessel shall, if required, supply light for night wok as on board free of expense to Charterers/ Shippers/Receivers.

## 13. TAXES AND DUES

- Any taxes / dues/ wharfages on cargo and / or freight at loading- and discharging ports shall be for charterers[1] account. Any taxes / dues /on vessel to be for owners[2] account   including: Tonnage dues based on GRT/NRT, harbour dues, berthing charges, pilotage, shifting (alongside quay), towage charges (in-/outbound), mooring-/unmooring charges (first berthing-last unberthing), light dues, agency fees and other non compulsory service charges ordered by the master of the vessel.

## 14. STEVEDORING DAMAGE AT LOADING PORT AND DISCHARGING PORT

Stevedore damage, if any, at loading- and discharging port shall be settled between port authorities, stevedores and owners, but charterers to give all possible assistance to owners in settling any stevedore damage claims of the vessel.

### 15. BILL OF LADING

Bill of Lading to be Congenbills. The Bills of Lading shall be signed by master or agents of owners (provided authorized) on completion of loading, marked "Freight payable as per Charter Party".

### 16. ASSIGNMENT

Neither carriers nor charterers may assign the contract in whole or in part without prior written consent of the other party. In either case carriers and charterers shall always remain responsible for the due fulfilment of this contract.

### 17. AGENTS

Carriers to appoint their agents at loading- and discharging port.

Once the agents have been confirmed, carriers shall inform charterers of their agents at the ports. Carriers or their agents shall send to charterers by express mail, fax or e-mail the statements of facts of the loading- respectively the discharging port within 5 business days after completion of loading and discharging.

### 18. GENERAL AVERAGE

In case of General Average adjustment to take place according to York Antwerp Rules 1974, amended 1990. Should the vessel be put into any port or ports due to an average incurred en route to loading- or discharging port, the master and carriers shall inform charterers as soon as possible without delay.

### 19. WAR CANCELLATION CLAUSE

in the event of war involving either Japan, the United States of America, Great Britan Russia, People's Republic of China, Brazil or the nation under the Flag of which any vessel performing under this contract is registered, and this, seriously affects charterers or carriers ability to perform or the cost of performing theirs obligations under this contract, charterers or carriers may advise the others party, that they wish to cancel this particular voyage.

The parties shall then meet within about thirty days to decide whether this contract or any part of it shall be amended or suspended for ninety (90) days. If the parties fail to agree to any solution offered by either party during the course or at the end of the 90 days suspension time, the voyage in question is considered to be cancelled.

In the event of a declared war between any of the abovementioned countries directly effecting the performance of this contract, both, charterers and carriers have the option of cancelling this contract.

HANSE SHIPPING

## 20. BOTH-TO-BLAME COLLISION CLAUSE

Clause 23 of ASBATIME 1981 to apply to this contract.

## 21. NEW JASON CLAUSE

Clause 23 of ASBATIME 1981 to apply to this contract

## 22. CLAUSE PARAMOUNT

All Bill of Lading under this contract to include the following clause Paramount:
Hagues Visby Rules 1968 or similar legislation of the country of destination shall   be
applicable

## 23. .WAR RISK

Clause 16 of Gencon C/P (revision 1994) shall apply to this contract.

## 24.  ARBITRATION

Any disputes arising under the contract shall be settled amicably. In case no such
settlement can be reached, the matter of dispute shall be referred to three persons in
London and according to English law. One chosen by each of the parties hereto and
the third by the two so chosen, their decision or that of that two of then shall be
final, and for the purpose of enforcing and award this agreement may be made a rule
of the court .The arbitrators shall be commercial persons.

## 25. WAR RISK  INSURANCE

War Risk Insurance on vessel if any shall be for owners' account.

## 26. EXTRA INSURANCE ON CARGO

The vessel to be free of extra insurance premium on cargo.

## 27. LIEN

Owners shall have a lien cargo ocean freight dead freight, demurrage and general
average contribution due the under this  contract

## 28. LANGUAGE / COMMUNICATION

It is agreed that the English language will be used in notice letters, cables and all
others means of Communication. All relevant Communications between Charters and
Owners shall be made trough Telex, telegram, fax or e-mail.

## 29. HEADINGS

The headings in tfae contract are for the purpose of convenience only and shall not limit or otherwise affect any of the terms or stipulations hereof. The contract is written in English and signed äs performing contract

In witness whereof, this contract has been executed by and between carriers and

Charterers in two (2) originals, one of each to be retained by carriers and charterers.

Belo Horizonte (Brazil) / Basel (Switzerland), April.....................,2008.

**THE CHARTERERS:**                    **THE CARRIERS:**

EXHIBIT 9



**Re: Rede Gusa Mineracoes Ltda - contracts Pig Iron/ Iron Ore**                  Tuesday, 15 April, 2008 10:32 PM
From: "Viasollo - Rogerio" <viasollo@terra.com.br>
To: "H.S.C. - Swiss Chartering" <swiss_charter@yahoo.co.uk>

Dear Mr. Hans
Regarding pig iron and iron ore freight contracts
I called Mr. Marghieri and he said that it's ok and acceptable  for RG.
He will send us the signed contracts soonest
Brgds,
Rogério Raugust
Phone:   +55 51 3426.1920
Cel:       +55 51 8432.1336
email:   viasollo@terra.com.br
msn:     viasollo@hotmail.com
Skype:   viasollo


----- Original Message ----
From: "Viasollo - Rogerio" <viasollo@terra.com.br>
To: "Swiss Chartering" <swiss_charter@yahoo.co.uk>
Sent: Monday, April 14, 2008 11:40 AM
Subject: Re: Rede Gusa Mineracoes Ltda - contracts Pig Iron/ Iron Ore


> Dear Mr. Hans
> Ok, I guided the two contracts to Mr. Marghieri today morning.
> Brgds,
> Rogério Raugust
> Phone:   +55 51 3426.1920
> Cel:       +55 51 8432.1336
> email:   viasollo@terra.com.br
> msn:     viasollo@hotmail.com
> Skype:   viasollo
>
>
>
> ----- Original Message ----
> From: "Swiss Chartering" <swiss_charter@yahoo.co.uk>
> To: <viasollo@terra.com.br>
> Sent: Sunday, April 13, 2008 7:28 PM
> Subject: Rede Gusa Mineracoes Ltda - contracts Pig Iron/ Iron Ore
>
>
>> Dear Mr Raugust,
>>
>> - we corrected the pig iron c/p (freight US 50,-...).
>> Please find same attached.
>>
>> - In addition we draw up the Iron Ore c/p with the
>> new freight/commencement etc. - Also attached with
>> separate mail due to limited attachment space on our
>> part.
>>
>> - If they are signed by R.G. please return same,- we
>> will then send back 1 original duly counter signed.
>>
>> - Thereafter we will cancel the old and issue new
>> commission agreements (again 2,25%)
>>
>> - Purchase of vessels: will submit proposals later
>> tomorrow.
>>
>> Kind regards
>>
>> HSC/H F Bihn
>>
>> Hanse Shipping Corporation
>> Hans F Bihn
>> Basel/Switzerland
>> Freight Contractors (Handy-/Panamax-/Capesize)
>> E-mail:<swiss_charter@yahoo.co.uk>
>>        <swissbulkers@yahoo.com>
>> Tel.:+41 61 322 7451/Fax:+41 61 322 7438
>> Mob.:+41 79 703 3812
>> Skype ID:SWISSTANKERS
>> Yahoo Messenger ID:SWISSBULKERS
>>
>>
>> _____

EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HANSE SHIPPING CORPORATION,

|  |  |  |
|---|---|---|
|  | Plaintiff, | 09 CV |

-v-

REDE GUSA MINERAÇÕES LTDA.,

**ATTORNEY'S DECLARATION
THAT DEFENDANT CANNOT BE
FOUND IN THE DISTRICT**

Defendant.
-------------------------------------------------------------------x

This declaration is executed by **George M. Chalos, Esq.,** counsel for the Plaintiff,

HANSE SHIPPING CORPORATION, in order to secure the issuance of a Summons and

Process of Maritime Attachment and Garnishment in the above-entitled, in personam, Admiralty

cause.

Pursuant to 28 U.S.C. §1746, **George M. Chalos, Esq.,** declares under the penalty of

perjury:

I am a Member of the firm of CHALOS & CO, P.C., attorneys for Plaintiff in the above

referenced matter.

I am familiar with the circumstances of the Verified Complaint, and I submit this

declaration in support of Plaintiff's request for the issuance of Process of Maritime Attachment

and Garnishment of the property of the defendant, REDE GUSA MINERAÇÕES LTDA.,

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the

Federal Rules of Civil Procedure.

I have personally inquired or have directed inquiries into the presence of the defendant in

this District.

I have personally checked with the office of the Secretary of State of the State of New

York, using the Secretary of State's Division of Corporations database, and I have determined

that, as of August 27, 2009, the defendant is not incorporated pursuant to the laws of New York, and have not nominated any agent for the service of process within the Southern District of New York.

I have inquired of Verizon Telephone Company whether the defendant can be located within this District. The Verizon Telephone Company has advised me that the defendant does not have any telephone number listings within this District.

I have further consulted with several other telephone directories on the internet, and I have found no separate telephone listings or addresses for the defendant within this District.

I have engaged in a Google search as to whether the defendant can be located within this District. The Google search results did not provide any information that defendant is found in this District.

I am unaware of any general or managing agent(s) within this District for the defendant.

In that I have been able to determine that the defendant has not appointed an agent for service of process within the Southern District of New York and that I have found no indication that the defendant can be found within this District for the purposes of Rule B, I have formed a good faith belief that the defendant does not have sufficient contacts or business activities within this District and does not have any offices or agents within this District to defeat maritime attachment under Rule B of the Supplemental Rules for Admiralty and Maritime Claims as set forth in the Federal Rules of Civil Procedure.

It is my belief, based upon my own investigation that the defendant, REDE GUSA MINERAÇÕES LTDA., cannot be found within this District for the purposes of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

Dated: Oyster Bay, New York
       August 27, 2009

                                 CHALOS & CO, P.C.
                                 Attorneys for Plaintiff
                                 HANSE SHIPPING CORPORATION

By:                                      
                                 George M. Chalos (GC-8693)
                                 123 South Street
                                 Oyster Bay, New York 11771
                                 Tel: (516) 714-4300
                                 Fax: (866) 702-4577
                                 Email: gmc@chaloslaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HANSE SHIPPING CORPORATION,

                               Plaintiff,                09 CV

-v-

                                          **VERIFICATION OF**
                                          **COMPLAINT**

REDE GUSA MINERAÇÕES LTDA.,

                               Defendant.
-------------------------------------------------------------------x

        Pursuant to 28 U.S.C. §1746, GEORGE M. CHALOS, Esq., declares under the penalty of perjury:

        1.      I am a Member of the law firm of CHALOS & CO, P.C., counsel for the Plaintiff, HANSE SHIPPING CORPORATION herein;

        2.      I have read the foregoing Verified Complaint and know the contents thereof; and

        3.      I believe the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its agents, underwriters and attorneys.

        4.      The reason that this verification was made by deponent and not by the Plaintiff is because Plaintiff is a foreign corporation, whose officers are not in this district, and whose verification cannot be obtained within the time constraints presented by the circumstances of this case.

        I declare under penalty of perjury that the foregoing is true and correct.

Dated:  Oyster Bay, New York
         August 27, 2009

                                   CHALOS & CO, P.C.
                                   Attorneys for Plaintiff
                                   HANSE SHIPPING CORPORATION

                By:    _____
                                   George M. Chalos (GC-8693)
                                   123 South Street
                                   Oyster Bay, New York 11771
                                   Tel: (516) 714-4300
                                   Fax: (866) 702-4577
                                   Email: gmc@chaloslaw.com